**So Ordered.**

**Dated: February 27th, 2020**



*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>Mario Botello Soria<br>&<br>Leticia Ramirez Garcia,<br><br>Purported Debtors. | Case No. 19-01812-WLH7<br><br>**ORDER RESOLVING ALL PENDING MOTIONS AND MATTERS** |

The court issues this order to resolve all pending motions and matters in the above-captioned case and to explain why the court declines to consider any further filings in connection with this dismissed case.

## BACKGROUND

The purported debtors, Mario Botello Soria and Leticia Ramirez Garcia ("Petitioners"),[1] held themselves out as spouses in a putative joint chapter 7 petition.[2] Because Petitioners are not spouses, the United States trustee moved to dismiss this case due to Petitioners' ineligibility to file a joint bankruptcy petition.[3] Petitioners did not oppose the United States trustee's motion. The court granted the motion on January 6, 2020.[4] Petitioners did not seek reconsideration or any other review of the dismissal order; hence that order is final and unappealable.

---

[1] Because Mr. Soria and Ms. Garcia were ineligible debtors, the court refers to them as Petitioners.

[2] *See* ECF No. 1.

[3] ECF No. 17.

[4] ECF No. 26.

ORDER RESOLVING ALL PENDING
MOTIONS AND MATTERS          Page 1

19-01812-WLH7     Doc 49     Filed 02/28/20     Entered 02/28/20 14:40:31     Pg 1 of 6

Before the court dismissed the main case, individuals Katie Harshfield and Jesus Ceja d/b/a Bella's Collision Center ("Claimants") filed an adversary proceeding against one Petitioner and several other parties. Among other things, Claimants asked the court to deny the Petitioner-defendant a discharge as to the debt owed Claimants, as well as all debts generally.[5] The genesis of the adversary proceeding was a damaged vehicle the Petitioner-defendant brought to Claimants' repair shop. As of the petition date, the vehicle was in the possession of the repair shop. Petitioners, however, reobtained possession of the vehicle during the bankruptcy case (apparently in large part due to threats Petitioners' counsel made based on the automatic stay). Following dismissal of this bankruptcy case, the court *sua sponte* dismissed the associated adversary proceeding in its entirety, but the court made clear that such dismissal was not an adjudication of any right, claim, or defense on the merits and was without prejudice to Claimants' ability to pursue any asserted claims in an appropriate forum.[6]

Thus far, this would seem to be a garden-variety end to bankruptcy proceedings that were poorly grounded at their inception, but there are some further wrinkles.

First, Claimants sought language in the dismissal order expressly requiring Petitioners to return the vehicle to Claimants' repair shop pursuant to Bankruptcy Code section 349(b)(3).[7] Because this request was supported by case law,[8] the court included such a provision in the dismissal order.[9] Petitioners did not initially comply with the provision, which prompted Claimants to file a contempt motion and a motion for an examination under Federal Rule of Bankruptcy Procedure 2004.[10] Those motions remain pending.

Second, Petitioners' counsel, Brian J. Gieszler, moved to withdraw as their attorney.[11] Mr. Gieszler filed the withdrawal motion just one day after Claimants filed their contempt motion – Mr. Gieszler represented to the court on the record

---

[5] Adv. Proc. No. 19-80029-WLH.

[6] *See id.*, ECF No. 15.

[7] *See* ECF No. 21.

[8] *See, e.g.*, *In re McGregor*, 2016 Bankr. LEXIS 3297, at *6-7 (Bankr. E.D.N.C. Sept. 9, 2016); *In re Beeman*, 268 B.R. 268, 270-71 (Bankr. D. Kan. 2001).

[9] *See* ECF No. 26 ¶ 3.

[10] *See* ECF Nos. 29, 36.

[11] *See* ECF No. 33.

ORDER RESOLVING ALL PENDING
MOTIONS AND MATTERS          Page 2

that this timing was purely coincidental. Claimants opposed the withdrawal motion[12] and the court set the matter for hearing. At the hearing, the court explained that Petitioners were acting in a contemptuous fashion by failing to return the vehicle as the court directed and, as such, exposed themselves to significant sanctions.[13] Given the gravity of Petitioners' conduct – which implicated nothing less than the rule of law itself – it was clear that Petitioners needed counsel to advise them about the potential consequences of continued noncompliance and to represent them at any contempt hearing. Due to Mr. Gieszler's involvement from the outset, the time-sensitive nature of the issue, and the lack of substitute counsel to replace Mr. Gieszler, the court determined it would be inappropriate for Mr. Gieszler to withdraw as Petitioners' counsel at that time.[14] Based on these considerations, the court denied Mr. Gieszler's withdrawal motion without prejudice.[15]

Apparently in response to the denial of Mr. Gieszler's withdrawal motion and the court's articulation of the possibility that serious sanctions could be imposed, Petitioners returned the subject vehicle to Claimants the following day.[16] Although this purges Petitioners' contempt, the saga does not end there. Claimants contend that Petitioners returned the vehicle in poorer condition than existed on the petition date. As a result, Claimants continue to assert various damage claims against Petitioners (which they ask this court to resolve).[17] For his part, Mr. Gieszler appears to renew his motion to withdraw as counsel for Petitioners, although that is conjecture by the court since Mr. Gieszler simply uploaded a new proposed order granting his motion without evidence or explanation.[18]

---

[12]  *See* ECF No. 38.

[13]  *See generally, e.g.*, *Gharib v. Casey (In re Kenny G Enters., LLC)*, 692 F. App'x 950 (9th Cir. 2017) (affirming bankruptcy court's imposition of significant monetary sanctions, daily additional sanctions, and multi-year incarceration for noncompliance with a turnover order as "properly coercive" and thus within the bankruptcy court's civil contempt powers under Bankruptcy Code section 105(a)); *In re Kenny G. Enters., LLC*, 2019 Bankr. LEXIS 398 (Bankr. C.D. Cal. Feb. 7, 2019) (denying on remand a motion for release from custody filed by contemptuous party who, at that point, had been subject to 45 months of continued confinement).

[14]  *See, e.g.*, Wash. R. Prof. Conduct 1.2(a), 1.2(d), 1.3, 1.4, 1.16(b)(1), 1.16(c)–(d), 1.16 cmt. [9]; *In re Cohen*, 82 P.3d 224, 231-32 (Wash. 2004).

[15]  ECF No. 45.

[16]  *See* ECF No. 48 ¶¶ 7-8.

[17]  *See id.* ¶¶ 9-11.

[18]  *See* ECF No. 46.

# DISCUSSION

Bankruptcy courts are specialized courts of limited jurisdiction.[19] Because bankruptcy judges are not appointed under Article III of the Constitution, absent consent of the parties, bankruptcy courts lack the judicial power necessary to finally resolve some matters over which they have jurisdiction.[20]

Bankruptcy jurisdiction and power are appropriately exercised to advance one or more of the many driving principles of federal bankruptcy law, such as effecting the discharge or reorganization of an honest debtor, facilitating timely collection and distribution of the *res* within the bankruptcy estate, or ensuring the fair and equitable treatment of similarly-situated creditors.[21] By contrast, bankruptcy jurisdiction and power are often not appropriately deployed to resolve disputes between private parties collateral to any core bankruptcy function.[22]

Dismissal of a bankruptcy case undoubtedly has a narrowing effect on a bankruptcy court's jurisdiction and power. Dismissal eliminates the bankruptcy estate, reinstates various matters, and generally restores the *status quo ante*.[23] Indeed, after dismissal nearly all powers and protections available under the Bankruptcy Code become unavailable, there is no discharge to obtain or enforce, and there is no estate to preserve or distribute to creditors – specific statutory provisions and overarching bankruptcy principles all largely fall by the wayside.[24]

Nevertheless, dismissal does not categorically eliminate all jurisdiction and power of a bankruptcy court. A bankruptcy court retains the discretionary ability to interpret and enforce its own "orders entered prior to dismissal of the underlying bankruptcy case and to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying

---

[19] *See* 28 U.S.C. §§ 151, 157, 1334.

[20] *See Stern v. Marshall*, 564 U.S. 462, 482-503 (2011).

[21] *See, e.g.*, *Toibb v. Radloff*, 501 U.S. 157, 163 (1991); *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 527-28 (1984); *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966); *Young v. Higbee Co.*, 324 U.S. 204, 210 (1945); *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941) (Douglas, J.); *Boese v. King*, 108 U.S. 379, 385-86 (1883).

[22] *See, e.g.*, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70-75 (1982); *Rosehedge Corp. v. Sterett*, 274 F.2d 786, 788 (9th Cir. 1960).

[23] *See, e.g.*, 11 U.S.C. § 349; *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 984-86 (2017).

[24] *See, e.g.*, *Cimo v. Petty (In re Petty)*, 848 F.2d 654, 655 (5th Cir. 1988) (holding that dismissal of bankruptcy case mooted dispute about the operation of Bankruptcy Code section 365(d)(4)).

action."[25] In this context, the bankruptcy court exercises its discretion after considering principles of "economy, convenience, fairness and comity in deciding whether to retain jurisdiction" regarding any ancillary matters.[26] In all events, a "bankruptcy court does not have jurisdiction, however, to grant new relief independent of its prior rulings once the underlying action has been dismissed."[27]

Here, the court declines to exercise whatever jurisdiction it may have to resolve the lingering disputes between Claimants and Petitioners. This case has been dismissed and there is no bankruptcy purpose served by adjudicating the remaining claims between these private parties[28] – even assuming that this court possesses the jurisdiction and power necessary to complete such an adjudication. Although Petitioners previously violated the court's dismissal order by not promptly delivering the vehicle to Claimants, they have apparently now purged that contempt to the extent they are capable of doing so. The court finds no basis

---

[25] *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989) (citations omitted); *see also, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (concluding that it is "easy" to answer that a "Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders" (citing and following *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934))).

[26] *See Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir. 1992).

[27] *In re Taylor*, 884 F.2d at 481.

[28] Claimants assert that Petitioners violated the automatic stay by reacquiring the vehicle from Claimants directly rather than allowing the chapter 7 trustee to obtain the vehicle for the benefit of their putative estate. This may technically be correct insofar as it is not clear that Petitioners would be able to exempt 100% of the vehicle's value and thus the trustee arguably should have obtained the property and any nonexempt value (although the Supreme Court has a pending case regarding whether the automatic stay is the correct mechanism for a trustee or debtor to obtain possession of a vehicle held by a third party before the bankruptcy filing, *see City of Chicago v. Fulton*, Case No. 19-357). Any technical violation is academic at this point, though, as the stay terminated upon dismissal of the case, *see* 11 U.S.C. § 362(c)(2)(B), and the estate that the stay is designed to protect no longer exists and hence suffered no injury from the potential violation. *See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Property Builders, Inc.)*, 699 F.2d 963, 964 (9th Cir. 1982) ("Obviously the automatic stay provided in 11 U.S.C. § 362(a) was dependent upon the operation of the bankruptcy law, and that law was pertinent only because of the existence of the proceeding in bankruptcy. . . . Once the bankruptcy was dismissed, a bankruptcy court no longer had power to order the stay or to award damages allegedly attributable to its vacation."). Regardless, "a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay" because "if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay." *Tilley v. Vucurevich (In re Pecan Groves of Ariz.)*, 951 F.2d 242, 245 (9th Cir. 1991); *see also, e.g.*, *id.* at 246 (further explaining that a party's "standing as a lienholder, and thus as a property owner with interests adverse to the estate, requires us to hold that he does not have standing in a bankruptcy proceeding to challenge actions as violative of the stay"); *Magnoni v. Globe Inv. & Loan Co. (In re Globe Inv. & Loan Co.)*, 867 F.2d 556, 560 (9th Cir. 1989) (recognizing that parties with interests adverse to the bankruptcy estate lack standing to enforce the automatic stay); *In re Pax Am. Dev., LLC*, 2013 Bankr. LEXIS 4859, at *2 (Bankr. C.D. Cal. Nov. 15, 2013) ("Because the only legal beneficiaries of the automatic stay are the debtor and trustee, a creditor does not have standing to seek damages for violation of the automatic stay."). Thus, Claimants lack standing to prosecute, in this court or anywhere else, claims based on alleged violations of the automatic stay.

for imposing sanctions at this juncture, particularly related to issues beyond the scope of its dismissal order.

If Claimants are dissatisfied with the condition of the vehicle or wish to seek other monetary damages against Petitioners for their alleged prepetition or postpetition conduct – relief that would undoubtedly be "new" and "independent" of the limited relief the court previously granted under Bankruptcy Code section 349(b)(3) – then Claimants can pursue those matters in a Washington state court that is fully capable of resolving all remaining disputes.[29] None of the principles of economy, convenience, fairness, or comity weigh in favor of allowing an economic battle involving nonbankruptcy rights and remedies between what are now purely private parties to be adjudicated in this specialized forum. In the end, Petitioners should not have filed this joint bankruptcy case and the court properly dismissed it; the time has now come to put it completely to rest.

Based on the foregoing, it is **ORDERED** that:

1. The court will not consider any further filings in connection with this dismissed case;

2. Because there will be no further proceedings occurring before this court in connection with this case, Mr. Gieszler's motion to withdraw as counsel for Petitioners is granted insofar as it relates to this dismissed bankruptcy case; and

3. All other pending motions are denied as moot.

///End of Order///

---

[29] *Cf. Elias v. United States Trustee (In re Elias)*, 188 F.3d 1160, 1162 (9th Cir. 1999) (affirming bankruptcy court's refusal to consider a post-dismissal fee dispute when a state court was fully capable of resolving that dispute).